Good afternoon. I'm Stephen Mayer for Appellant, and I would like to reserve four minutes for rebuttal, if I may. Okay, what's your clock? I want to focus on two issues this afternoon. First, the Manel issue, and second, the issue of procedural due process. With respect to Manel, I think the underlying facts are pretty straightforward. The line change at issue was part of a capital improvement plan. The plan was presented to the board, at least for informational purposes. It was part of a project that began in 2008. It was completed in November 2009. But if you're right on Manel, we need to address a question that you didn't mention in terms of the questions you want to address, and that is, is this the sort of property that would be properly subject to a Fourth Amendment challenge? That's correct. And also, if I may add a question to your question, Your Honor, also whether it's the type of property that gives rise to a due process claim, a procedural due process claim under the Fifth Amendment. Those are related, but different questions. I think that's right. And it's certainly true that with respect that Manel only gets you partway there. You have to establish a substantive constitutional violation once you show, you know, the prerequisite for entity liability. And I'd be happy to talk about that. Well, that's the question that concerns me because I'm willing to go with you as far as on Manel. I'm not sure about my colleagues. Okay. Let me then talk about what property is. And if I may, let me start by talking about property for purposes of the Fifth Amendment claim. Well, you know, the Fourth Amendment is the one that concerns me.  Well, let me talk about the Fourth Amendment. The question, it is clear from this Court's Kaye decision in Jefferson that a contractual right may be a property interest for purposes of the Fourth Amendment. And the Court really could not have been clearer about that. Yeah, but that was physical property. That was a package that was being sent. It was indeed. But the pointed issue, the Court made clear in that case that if the seizure had happened before the deadline for delivery, there would have been no Fourth Amendment property involved. So as a result, the logical extension is that the only thing that gave rise to the Fourth Amendment property claim, seizure claim in that case, was the fact that the contractual right had been interfered with, because prior to that point, no Fourth Amendment claim arose. That was true of both this Court's decision in Jefferson and the First Circuit's decision in La France. So what do you do, how would you characterize the property right at issue here? It was, I think it's fair to say, a present entitlement that satisfies both. A present entitlement to what? Power. Power. The power under the contract, the power, quote, required to service the plant. Now, well, it wasn't an entitlement to power, it was an entitlement to an ability to transmit. Wasn't that right? No, no, no, no. There are two. The power went into the plant and out of the plant. Okay. And I think what concerns the terms of delivery of power, they didn't seize something that belonged to them, they just failed to deliver. They failed to provide the power. The word deliver is a little – it could refer to power from Elmwood to us or to us from Elmwood. I'm talking about the power that Elmwood delivered to us. Yeah. And they say – Do you think you owned the power? Is that what the property interest, that you owned the power? We did, actually. We had a right to – we had a contractual right to that power, yes. Contractual is key. I mean, why isn't this a contract case? In fact, what is the current status of this case? There is a State court action that's pending in – now in Lassen County, or I think that's right, and there was several State law claims that were filed. A demur was filed as to some of those claims, interestingly enough, not including the breach of contract claim. And I understand from the electronic docket of the Superior Court that there's been a ruling on the demur, but neither I nor opposing counsel know exactly what the ruling is. So more than that, I don't know. So you have a pending breach of contract claim right now? Yes, we do. We do. So I guess what I don't understand is why this is a Federal case at all. Like, what constitutional property right were you deprived of for your claim? I think, and I'll be candid about this, I think our – we have a stronger property claim with respect to the Fifth Amendment than we do with respect to the Fourth Amendment, and that is because the standards for assessing what's a property interest under the Fourth Amendment are pretty undeveloped. But with respect to the Fifth Amendment, again, although the case law is sparse, we know what the test is from the Supreme Court's decision in Lujan and this Court's decision in San Bernardino Physician Service and DeBoer v. Pennington. And what the courts have held in those cases is that where you have a present entitlement to something, that can give rise to a claim of procedural due process as to which a post-termination breach of contract remedy is not sufficient. Now – But if we're talking procedural due process, the line of procedural due process cases is basically you're entitled to something upon the occurrence of certain events or the fulfilling of certain criteria, and the procedural due process claim is you didn't determine whether in advance of the failure to deliver or in advance of the taking, whether those criteria existed. This is not one of those, there are several criteria that had to exist before they could change the power line. This just doesn't fit in that line of cases. Well, with all respect, Your Honor, I think it does. And here's why. Because – and this is why a post-deprivation remedy is insufficient.  And I don't understand the violation. I don't see that yet. Well, I think the violation is that before the government takes away a property right, it has to give you notice that it's going to do that, and it has to give you some sort of hearing. It doesn't have to be – Well, but you had no – I mean, let's just assume you have a property right. Didn't you have notice? I mean, they sent you a notice. No, no. What we had was, was notice that it would happen. What we didn't have was notice that we had an opportunity to go appear in front of the board or to go talk to the general manager and say, you know – But once you got the notice that it was going to happen, what did you do? What did your client do? Well, I think there's some dispute in the record about what exactly was communicated to the client and what the client did to it. And of course, those facts have to be construed in our favor for purposes of summary judgment. What I believe the record shows is that there was conversation between Ms. Faranini's client and my client about when the line change would occur. But there was no conversation about whether it should occur. Because – But wait a second. As a practical matter, when you substitute the – when you substitute the pipeline that transmits and delivers power, I guess it's a two-way line, doesn't that take some time? Doesn't your client observe it happening? I mean, they went from a pretty large line. They cut it by more than a half. I mean, didn't this take time to have this thing occur? Didn't you notice it? Pardon? I mean, your client was there changing the line, the line that goes in, I guess, into the power plant, right? Correct. So – It goes into a transformer, but – Whatever goes into the transformer, I guess it's then used to generate the power that you use to produce more power and send out. Right. But so this had to be ongoing. But the fact that you have notice of a fait accompli is not the same as notice that a government agency is considering a course of action and you have the opportunity to address the governmental agency before it occurs. And let me go back to the point I was making. But surely they knew that the government – that the – it's ELMUD, the Alaskan Municipal Utility District. Surely they knew that ELMUD was in there changing the line. So they knew it before it happened. I'm not sure how long, because that seems to be disputed, but they didn't – ELMUD didn't sneak in there and do it and say, oh, I got you now. That's correct. Yeah. They didn't – but they didn't have – what is – what constitutionally adequate notice is not notice that says, you know, we're going to do something and when do you want it to occur. Mr. Criminal, when do you want to start serving your sentence before the trial happens? Constitutionally adequate notice is, as the Supreme Court said in Memphis v. Kraft, is notice that tells you what your rights are, that you have the right to contest what the government's doing. And the key point here, as the Supreme Court said in Cleveland Board of Education v. Loudermill, that one critical difference between pre-deprivation and post-deprivation process is that in litigation after the fact, the court is limited to was there a breach of contract. But if we'd gotten pre-deprivation notice, we could have addressed not only the issue of whether they had the legal right to do it, but whether assuming they had the legal right to do it, whether that right should be exercised. The court in Loudermill said that the big difference between pre-deprivation and post-deprivation hearing is that the former but not the latter gives you an opportunity to appeal to the discretion of the agency. My fundamental problem with this is a conceptual one. If we were to go along with your idea that this is a violation of procedural due process, I have trouble seeing how we – where there's a stopping place. It looks as though every contractual dispute with the government then becomes a constitutional dispute over due process. Sotomayor Well, let me give you one pretty clear way to separate the sheep from the goats. In all the cases that address this issue, in Lujan, San Bernardino Physician Service, DeBoer v. Pennington, the plaintiff is a supplier of goods and services to the government. So the government's obligation is to pay money. And in those cases, the court justifiably held that the plaintiff's remedy was an after-the-fact breach-of-contract remedy for contract damages. But here, this case is the flip side. This is a case where the government isn't in the position of paying money. The government is providing a service as to which we have a present entitlement. Robertson But why is – I understand that they're different in that respect, but why is that a relevant difference? Because it explains why the – this case falls on the present entitlement side of the line as opposed to the mere contract remedy side of the line. I mean, that's – look, that's the – but you've just flipped it because ordinarily due process is – it's deprivation of property, that is to say, suggesting that it already belongs to your client, whereas instead what's happening is they're failing to deliver something. Well, but they're failing to deliver something that we have a contractual right to have, and the court in Board of Regents v. Roth and this court in San Bernardino Physician Service have said that the property interests protected by the Fifth Amendment have their source in – can have their source in State law and, indeed, in contract right. So I think – look, I couldn't stand here and tell you that the line is crystal clear, and in part that is because there are not a whole lot of cases addressing this precise issue, and the courts have not articulated a standard. But what I think I can do is – is given that the – is to tell you that given where the cases are, that here's a line that makes sense. And when you talk about a present entitlement, in particular, I would say, a present entitlement that interfered with our ability to operate the plant, that were nearer the kind of cases that the Supreme Court has held justify holding the post-termination breach of contract remedy inadequate. In, for example, in Barry v. Barchi and in FDIC v. Mallon, the court was talking about the right to engage in an occupation or a business. And that's really what happened here. Admittedly, the plaintiff is a corporation rather than an individual, but that doesn't matter for constitutional purposes. The fundamental point is that our right to use our property to generate revenue was interfered with because the State, the LMUD, came along and deprived us of something that we have a contractual right to get. And I see I'm almost out of time. So I should – Ginsburg. So can I just ask you one more question? Okay. Under these agreements, are you technically a third-party beneficiary of this contract? No. The contract that we're relying is a contract between LMUD and us, or actually it was between LMUD's predecessor and us, and that's on, I think it's page 57 of the record. And it basically says, page 57, and it says CPW, CPN, that's LMUD's predecessor, will provide electric service for all energy and capacity required to service the premises. And that was a contract between Ms. Faranini's client's predecessor and my client. But what they were doing was providing a facility through which PG&E and your client could exchange energy. I think the – there were several contracts, and the ultimate purpose of the contract between LMUD and us was so that we could provide power that we then provide to PG&E. That's correct, but it was still a bilateral contract between LMUD and Amity. So let me save my one second for rebuttal. I hope the Court will give me a little time to respond. All right. Thank you, Mr. Meyer. Good afternoon. May it please the Court. I'm Cassandra Faranini. I represent LMUD. This Court can affirm the district court judgment on the basis that AGVI's purported contract right doesn't rise to the level of a constitutional property interest. That is a very simple, easy, dispositive, nonfactual way in which this Court can resolve this problem. The question is dispositive, and the district court got it right, regardless of what amendment you are looking at. Under the Fourth Amendment, AGV relies on the drug package cases to say that a property right rises to the level of a constitutional right. In those cases, however, the contract was not with the public entity, as it is in our case. The remedy that was being sought was the overturning of a criminal conviction, not loss of the property. And so those cases, Jefferson and LaFrance, are completely not on point. They are suppression cases. Next, AGVI argues that a seizure occurred because there was some sort of administrative or investigative purpose. And the cases on this, Addison, where a blood draw by a doctor at a county hospital was given to the police, and Arpin, where a citizen's arrest was made, both of those cases approximate criminal conduct or involve police action. This case is nothing like that. AGVI does not contend that Elma took its power in order to use it as evidence against AGV. So there is no property interest under the Fourth Amendment, and there is no property and there is no investigative or administrative purpose that is claimed. AGV also asserts rights under the Fifth and the Fourteenth Amendment, setting aside the fact that the procedural due process claim was not made, really, in the court below. The district court, nonetheless, got it right on the Fifth Amendment. San Bernardino Physician Services, Lujan, DeBoer, all of those cases stand for the proposition that where there is a State court remedy, that remedy applies. There's no need to make a Federal case out of it. In San Bernardino Physician Services, individual interests were being served. And that also distinguishes that case from our case here. And it's also why the Memphis gas and light case is distinguishable. In that case, residential homeowners brought a claim that they were not provided with notice and an opportunity to be heard before their power was shut off for failure to make payment of the bill. And the court in that case held that there was a legitimate claim of entitlement. And to ascertain whether there was a legitimate claim of entitlement, the court looked to State law, because State law provided that where there was a dispute regarding the payment, then you couldn't just turn off service. So again, there was something above and beyond the contract that blew that right into the realm of a constitutional dimension. I'm wondering though, if they had, if, let's see, AMD had a right to get these three phases of delivery of 34.5, or whatever, 34.5 voltage. Right. Delivery, and now they can only get 12, and this has caused, well, forget about the damage. I'm sure they've had a tort action in state court too, or intentional interference or whatever. But they are now getting much less access to power. So in a sense, I can see why he's making this claim and why it's got all the way up to the Ninth Circuit. It's because in some sense, the LMUD has taken over half of its delivery of power. But Your Honor, the issue is that is remediable in state court. It is remediable in a contract action. It is remediable in a inverse condemnation action. And in fact, both of those are currently pending in Lassen County Superior Court. So it just simply doesn't rise to the level of a constitutional interest. It's property interest. I'm curious, why did you fight the Monell claim? I know you've made your arguments on whether there's constitutional possessor of property interest here, but why the fight the Monell?  The LMUD was responsible for cutting, lowering the power voltage. Well, it's not clear from the record, the record evidence is not clear. Loring's testimony is that it was work to go, it was projects they were considering. It should have, would have been in a five year plan. But there's no evidence of a five year plan. There is no evidence that the board acted. Information was presented to the board, but there's no evidence that the board acted. So we're supposed to conclude it was some rogue actor within LMUD who decided to do this? I don't know that it was a rogue actor, but at least there should be evidence that somebody made a decision somewhere, and from that decision you can ask the same. So what you're saying then is nobody made a decision and this just happened either accidentally or haphazardly? I'm not saying it's accidental or haphazard. Somebody made a decision. But did that decision rise to the level of policy under 1983? I don't know that it did. But again, though, I mean, to believe that it didn't in light of what we have in front of us, I mean, it seems to sort of this nonsensical sort of conclusion that it just was an accident or haphazard or something. It's really hard to believe given all the environmental requirements when you would go to change a transmission line. But this was routine maintenance. The briefs kind of blow this out. I have to say, if you're replacing a big line with a little line, that does not sound like routine maintenance to me. You lowered the voltage by over half. That's routine maintenance? It is making the system efficient. It's the kind of thing that they do. I mean, I'm not a lineman, so it's hard for me to assess the level to which that goes. But it seems like, though, you were arguing in your briefs that there had to be some evidence of some actual, you know, vote. And I'm just wondering if that's really required. I mean, it may not make a lot of difference in the end here, but I'm just curious. I think that it is required to attach it to a decision made by a policymaker, and there's nothing really that attaches this to a decision made by a policymaker. There's no five-year plan that was introduced into evidence, and there's no testimony regarding any of that that's introduced into evidence. Well, obviously, you don't need to win on this point in order to win. But I want to say, as to the Monell point, we define policy under Monell fairly broadly. That is to say, an individual person with authority to make a decision is a policymaker under our Monell jurisprudence. And if you're telling me that somebody made this decision without authority to make it, that would surprise me enormously. I guess my concern is just the magnitude of the decision is not, you know, it's not as though somebody's making these decisions and there's lots of evidence that everybody's power gets messed up and nobody gets the power that they want, and somehow Elmend has this practice of making improper decisions when they do this. There's none of that kind of evidence. I typically don't see Monell cases like this one. I've never seen one with a power company and a Monell decision. But, for example, we see Monell questions all the time when someone has been, say, fired from his or her position working for the city. And if the person who fired the person had the authority to fire him or her, that's policy. You don't have to affect a lot of people. You've just got to fire that one person. But that's policy for purposes of Monell. Well, here's the other issue with Monell, and we didn't argue this in our brief, but we did argue it in the court below, and that is that orchard case where the public entity went in and drilled a well and the water seeped in and changed the salinity of the water that was used to water the orchard, and so now then all the trees died after that. And then in that case, that effect from the policy and the decision that was made was so attenuated that the Court said that this is not remediable under 1983. So I think that there's, you know, a policy is a deliberate choice made from among alternatives, and we just didn't have any evidence in the record regarding those points. Not to say that it doesn't exist, but it certainly wasn't put before the district court. Finally, with respect to the exercise of supplemental jurisdiction and the Court's decision not to exercise supplemental jurisdiction, I wanted to give you an update on what's happening in Lassen. I know my opposing counsel has given you a little bit of an update. If I may go outside the record. You want to tell us about the pending case? Yes. And I want to do that in the event that you were to remand this, we would ask that you did not remand the state court claims because they're pending already in Lassen County Superior Court, and some of those claims overlap with the claims that were before the district court, and some of those claims do not. There are two constitutional claims under the California Constitution, and so I think that all of those factors which weren't before Judge Inkland at the time that he made his decision are still relevant to the analysis of whether those state law claims can be. Are the two of you involved in the Superior Court litigation? I am involved in the Superior Court litigation, and his firm is involved. So just to sum up, there is no constitutional violation. That is something that needs to be proved, and if you have no further questions, I would simply ask that you affirm the district court's decision. All right. Any further? No? Okay. Thank you. We'll give you Mr. Meyer, you can have another minute. I think the only thing I want to say is, not on Monell, but just reiterating the point that where you have a present entitlement to power that's necessary to operate your business, that the deprivation of that is very similar to the kind of constitutional claim that the Supreme Court held in Lujan made post-termination remedy inadequate. I mean, obviously, where someone is deprived of their livelihood, of course they have the right to sue for damages. But the Supreme Court in Lujan distinguished that case from the situation before it where all a plaintiff has is a claim for money. That was not true here. There, failure to furnish contractually required power basically put our plant out of business. And so this Court can reverse on that ground without opening the doors to a floodgate of contract litigation coming into court under the guise of a constitutional right. There are limiting principles that are easily available to prevent the constitutionalization of State court contract law. Did you ever actually argue that they took your business as opposed to taking part of your power line? We argued, we certainly argued that the end result of the power line, of the power line change was essentially the loss of business and the inability to operate the plant. There are lots of pages cited in our brief where we made that exact claim, that the loss of power interfered with our ability to operate our business. So, yes, yes, we did. All right. Any other questions?  Thank you. Thank you, Your Honor. Indy v. Elmed will be submitted. We'll take up Rivas v. Terminex International.
judges: Wardlaw, W. Fletcher, Murguia